IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:21cr205 |
| | ) | |
| LEONARD ROSEN, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: March 18, 2022 |

## United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Leonard Rosen ("Rosen"). The Pre-Sentence Investigation Report ("PSR") has calculated the Guidelines range at 46-57 months. As discussed in further detail in this memorandum, the Government is recommending a guidelines range here of 30-37 months with regard to incarceration. The Government intends to be bound by the Plea Agreement and the intentions of the parties in negotiating the Plea Agreement and has gained more information regarding the loss amount during additional debriefs with the defendant[1], which is reflected in this calculation.[2] The Government also notes that this Court has already

---

[1] The Probation Office has calculated Rosen's Offense Level at 23 and within this calculation has included a +2 increase based on loss to a federal health care program and a +16 increase based upon a loss of more than $1,500,000 but $3,500,000 or less. As reflected in the Plea Agreement, the Government has agreed not to recommend the +2 enhancement based on loss to a federal health care program. The victims in this matter are all private health care benefit programs and thus, it does not appear that this enhancement applies. Furthermore, based on further debriefs with the defendant, the Government has calculated the loss amount at approximately $1,300,000. As such the Government believes a +14 enhancement based on a loss of more than $550,000 but not more than $1,500,000 is applicable instead of the +16 enhancement. As such, the Government recommends that Rosen's Offense Level be calculated at 19.

[2] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the

sentenced one defendant involved in this conduct and has elected to sentence below the guidelines range[3]. Based on the advisory Guidelines range and the § 3553(a) factors, a sentence of incarceration of 20 months would be consistent with the sentence received by the related defendant. The Government further notes, however, that the PSR discusses specific circumstances related to the defendant's age, medical condition, and family situation which the Government anticipates defense counsel will further detail in defendant's Sentencing Position paper. Given the nature and scope of these arguments, the Government defers to the Court on whether an additional departure should be given based on those particular circumstances.

I.     Factual Background[4]

From at least in or around November 2014 through at least in or around October 2018, Rosen engaged in a health care fraud scheme by accepting kickbacks in exchange for referring prescriptions to pharmacies and for prescribing medications that were not medically necessary. Rosen is an obstetrician-gynecologist ("OB-GYN") who owned and operated a medical practice called Fairfax OB-GYN Associates ("Fairfax OB-GYN") from at least January 2014 to February 2017. Rosen ultimately sold the practice but continued to work at Fairfax OB-GYN until approximately October 2019. At Fairfax OB-GYN, Rosen worked with Doctor 1, Doctor 2, and Nurse Practitioner 1, who is a certified nurse midwife. During the relevant time period, Doctor 1

---

defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

[3] On March 19, 2021, the Court assessed the Guidelines range for defendant Mohamed Abdalla between 70 and 87 months, and sentenced Abdalla to a term of incarceration of 48 months. *See United States v. Abdalla*, 1:20-cr-250, Docket No. 17.

[4] The PSR and the Statement of Facts signed by the defendant (Doc. No. 7) adequately set forth the offense conduct in this case.

approached Mohamed Abdalla, a licensed pharmacist who owned and/or operated multiple pharmacies located in the Eastern District of Virginia, including Medex Health Pharmacy ("Medex Health") and Royal Care Pharmacy ("Royal Care"). Doctor 1 suggested that medical providers from Fairfax OB-GYN would send prescriptions for medications, including expensive compounded drugs, to Abdalla's pharmacies in return for financial kickbacks being paid to Rosen. Rosen was initially told that the compensation he was receiving from Abdalla was due to his participation in a "speaker bureau", but he quickly learned that this was not true and that the money was being paid in return for referring prescriptions to Abdalla's pharmacies.

Initially, Abdalla agreed to pay Rosen $100 per prescription sent by Fairfax OB-GYN to Abdalla's pharmacies, but later Rosen and Abdalla agreed that Abdalla would pay Rosen $5000 per month and they would perform a "reconciliation" at the end of the year. The majority of the prescriptions sent to Abdalla's pharmacies pursuant to the kickback arrangement listed Nurse Practitioner 1 as the prescriber, but Rosen, Doctor 1, and Doctor 2 also wrote prescriptions. Rosen, with Nurse Practitioner 1's agreement, made the decision that Nurse Practitioner 1 would be the prescriber for the compounded cream prescriptions, regardless of who was the treating provider, because she was the surgical first assistant at the practice.

Before entering into the kickback agreement with Abdalla, Fairfax OB-GYN did not prescribe compounded scar creams for every single surgical patient, and Rosen knew that patients could purchase over-the-counter medications to prevent scars. However, after Rosen entered into the arrangement with Abdalla, Rosen directed that every patient at Fairfax OB-GYN who had a surgery should receive a prescription for a compounded scar cream. Rosen did not determine whether these compounded scar creams were medically necessary for each patient, and Rosen knew that some of the patients that received the creams did not need them. At this time, Rosen

3

knew that when prescribing a compounded scar cream, it must be individualized for each patient, however, Rosen did not individualize the compounded prescriptions for each patient that received them. Rosen further knew that it was wrong to receive money in exchange for sending prescriptions to a pharmacy, and that his arrangement with Abdalla violated his contracts with private health insurance programs, including Anthem BlueCross/BlueShield and CareFirst BlueCross/BlueShield.

During the time period of the kickback arrangement, health care benefit programs paid $2,212,442 for compounded prescriptions that were prescribed by Rosen and Nurse Practitioner 1 and issued within 60 days of an office visit at Fairfax OB-GYN. Many of these compounded creams were not medically necessary, and the kickback scheme resulted in health care benefit programs paying approximately $1.3 million for medications that were not medically necessary.

In addition to the compounded creams, Fairfax OB-GYN also sent prescriptions to Abdalla's pharmacies for other medications, including a metabolic capsule compound containing red Alaskan algae powder, which was a very expensive ingredient. At one point during the arrangement, one of Abdalla's pharmacies, Royal Care, was having trouble getting paid for these prescriptions, and Rosen signed some letters provided to him by someone from Royal Care, confirming that Fairfax OB-GYN providers had written certain prescriptions for specific patients, including the metabolic capsules containing red Alaskan algae power. Rosen did not read the letters or write them, however, he signed them, or gave permission to use his signature stamp, to help the pharmacy receive compensation for the prescriptions. Rosen was not aware of what the compounds containing the red Alaskan algae powder were at the time, and thus, they were

4

medically unnecessary. These letters were sent to a pharmacy benefit manager ("PBM").[5] Through the time period of the kickback arrangement, Abdalla paid Rosen approximately $100,000.

Separately, between September 2012 and March 2019, Rosen engaged in a different scheme were he billed health insurance benefit programs for services provided to his patients under his out-of-network company, LAR M.D. P.C., despite the fact that those patients had insurance from health benefit programs that were in-network with Rosen and Fairfax OB-GYN. Rosen knew that he should have billed those services as an in-network provider. In these instances, Rosen also improperly waived patient co-payment/deductible amounts. On the occasions where Rosen did not initially get paid as an out-of-network provider for these services, he would re-bill these services as an in-network provider. During this time period, Doctor 1 asked Rosen how to set up a separate entity to bill as an out-of-network provider so that he could make more money, and Rosen provided advice to Doctor 1 on how to set up a separate company. Doctor 1 did in fact create another company that Doctor 1 used to bill for out-of-network services.

## II. Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). The Probation Office has calculated Rosen's total offense level at 23. This includes a base offense level of 6, a 16-level enhancement based on a total loss of more than $1,500,000 but $3,500,000 or less, a 2-level enhancement based on a conviction of a health care offense involving more than a $1,000,000 loss to a federal health care

---

[5] PBMs are companies that manage prescription drug benefits on behalf of health insurers, Medicare Part D drug plans, large employers, and other payers.

program, and a 2-level enhancement for abuse of trust. It also includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. The guidelines range for this total offense level is 46-57 months.

In the Plea Agreement, the Government has agreed not to recommend the additional +2 enhancement based on a loss to a federal health care program of more than $1,000,000. The Government intends to be bound by the terms of this Plea Agreement and the intent of the parties during the plea negotiations. In addition, the Government does not believe this enhancement is applicable since all of the victims in this matter were private health insurance programs. Furthermore, as stated above, based on further debriefs with the defendant, the Government has calculated the loss amount at approximately $1,300,000. As such the Government believes a +14 enhancement based on a loss of more than $550,000 but not more than $1,500,000 is applicable instead of the +16 enhancement. As such, the Government recommends a base offense level of 6, a 14-level enhancement based on a total loss of more than $550,000 but that is $1,500,000 or less, and a 2-level enhancement for abuse of trust. The Government's recommendation includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. Thus, the Government recommends a total offense level of 19. The guidelines range for this total offense level is 30-37 months. As noted above, the Court has already sentenced one related defendant who was involved in this conduct and has departed from the Guidelines in that case.

### III. Section 3553(a) Factors

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United*

*States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7).

    A.    *The Nature, Circumstances, and Seriousness of the Offense*

Here, Rosen's conduct involved committing health care fraud by accepting impermissible kickbacks for referring prescriptions to Abdalla's pharmacies, prescribing medications that were not medically necessary, and improperly billing services as an out-of-network provider. Rosen engaged in the kickback scheme for an extensive period of time – for approximately four years – and the scheme defrauded health care benefit programs of over $1 million. Rosen engaged in the scheme to bill services as an out-of-network provider for even longer. While it is true that Rosen was recruited into the kickback scheme by Abdalla and Doctor 1, Rosen engaged in the separate out-of-network billing scheme all on his own, and even educated Doctor 1 on how to set up his own similar scheme to bill as an out-of-network provider when the services should have been billed as an in-network provider.

Moreover, Rosen was complicit in helping Abdalla hide the fraudulent conduct from a PBM that was questioning prescriptions being filled by the pharmacy when Rosen signed letters certifying that Fairfax OB-GYN providers had prescribed the medications at issue, despite the fact that Rosen did not read these letters or even know what at least one of the medications was. These actions helped Rosen and Abdalla hide their conduct from the PBM, who was working on behalf of a health benefit program. While it is true that Rosen profited significantly less than Abdalla

from the scheme as he was only paid approximately $100,000 by Adballa, Rosen's participation was critical to the scheme to defraud health care benefit programs of a significant amount of money. These facts all demonstrate the seriousness of the criminal conduct engaged in by Rosen.

  B.  *Defendant's Personal History and Characteristics*

With regard to Rosen's personal history and characteristics, Rosen has been an OB-GYN who has practiced in Northern Virginia since 1980. As an OB-GYN, Rosen held a position of public trust and Rosen abused that trust by prescribing medications that were not medically necessary. Moreover, Rosen knew that it was wrong to receive money in exchange for sending prescriptions to Abdalla's pharmacies, and knew that it was wrong to bill for services as an out-of-network provider when those services should have been billed as an in-network provider; however, Rosen still choose to engage in this behavior. Another important consideration here is that Rosen knew that he held sway over Nurse Practitioner 1 and took advantage of this relationship and influenced her actions in signing prescriptions for some of the medications at issue.

On the other hand, it is important to note here Rosen does not have any criminal history. Furthermore, a review of the PSR indicates that Rosen has specific circumstances related to age, medical condition, and family situation which the Government anticipates defense counsel will further detail in Rosen's Sentencing Position paper and which are relevant to the sentencing determination.

  C.  *Respect for the Law and General Deterrence Considerations*

Finally, general deterrence is important in any white-collar case, but is particularly important here because health care fraud crimes like Rosen's are difficult to detect. Health insurance benefit programs rely on doctors to make truthful representations about services being provided and the reasons they are being provided. These programs do not have the resources to

investigate and verify that providers are complying with all applicable laws and rules. The jobs of these health care benefit programs become even harder when individuals, like Rosen here, make false representations to PBMs. Moreover, health care fraud does not just harm the health care benefit programs – it harms the beneficiaries because higher health care costs increase the amounts that these individuals have to pay over time for needed medications and services. While there is no evidence in this case that any patient harm occurred, the financial ramifications of this conduct were pervasive.

### V. Conclusion

For the reasons stated above, it is the Government's view that a sentence of incarceration of 20 months is consistent with the sentence given to the related defendant in this case. The Government defers to the Court on whether any additional departure is warranted here based on specific circumstances related to defendant's age, medical condition, and family situation. At sentencing, the Government will ask the Court to enter the restitution order and the consent order of forfeiture that will be provided to the Court and defense counsel prior to the hearing.

Respectfully submitted,

Jessica D. Aber
United States Attorney


By: _____/s/_____
Monika Moore
Carina A. Cuellar
Counsel for the United States
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov